(No. 97703.—

# EDEN RETIREMENT CENTER, INC., Appellee, v. THE DEPARTMENT OF REVENUE *et al.*, Appellants.

*Opinion filed December 2, 2004.*

Lisa Madigan, Attorney General, of Springfield (Gary Feinerman, Solicitor General, and Timothy K. McPike, Assistant Attorney General, of Chicago, of counsel), for appellant Department of Revenue.

Jack H. Humes, Jr., and Ellen M. Edmonds, of Edwardsville, for appellant Edwardsville Community Unit School District No. 7.

Ronald S. Motil, of Beatty, Motil & Foster, of Edwardsville, for appellant Village of Glen Carbon.

Edward T. McCarthy, of Edwardsville, for appellee.

Karen L. Kendall, Brent H. Gwillim and Craig L. Unrath, of Heyl, Royster, Voelker & Allen, of Peoria, for *amicus curiae* Life Services Network of Illinois.

JUSTICE FREEMAN delivered the opinion of the court:

Plaintiff, Eden Retirement Center, Inc., filed a complaint in the circuit court of Madison County seeking administrative review of a decision by the Illinois Department of Revenue (Department). The Department denied plaintiff's application for a charitable-use property tax exemption for the 1996 tax year. The circuit court set aside the Department's decision and granted the exemption, based solely on the court's interpretation of section 15—65 of the Property Tax Code (35 ILCS 200/15—65 (West 2000)). The appellate court affirmed. 346 Ill. App. 3d 252.

Defendants, the Department, Edwardsville Community Unit School District No. 7, and the Village of Glen Carbon filed a joint petition for leave to appeal (177 Ill. 2d R. 315(a)), which we allowed. We now reverse the judgments of the appellate and circuit courts, and confirm the decision of the Department.

BACKGROUND

The facts, as found by the Administrative Law Judge (ALJ), are not in dispute.

Plaintiff's Business

In 1976, plaintiff was organized as a not-for-profit corporation. Plaintiff's articles of incorporation included the following corporate purpose: "This corporation shall be organized and operated exclusively for charitable purposes in providing housing, nursing and other related care for the aged, and in connection therewith, to buy, sell, lease, mortgage and in all manner deal with real or personal property." Section 6 of plaintiff's bylaws provides:

"It is the express purpose of this corporation to be organized and operated exclusively for charitable purposes in providing housing, nursing care, financial security and

other related care for the elderly. Recognizing that charitable purpose, it is the intent of the corporation to provide housing, nursing care and other related care by limiting the charges for such services. To that extent, charges shall be set at an amount sufficient to amortize indebtedness, maintain reserves adequate to provide life care for the residents, and to set aside amounts sufficient for expansion to meet the community's need. All reserves provided for herein shall be reasonable. It is expressly provided that it is the intention of the corporation to continue to provide for the maintenance of those residents who are financially unable to continue making payments due the corporation for care. In order to continue to provide such services to residents, the corporation shall be authorized, in maintaining reserves for the care of the residents, to provide a reserve especially for the care of those who may be unable to further care for themselves and to make the payments due the corporation. It is the established policy of the corporation to continue to maintain such persons as residents. To the extent that charges previously determined exceed amounts determined above, then charges shall be reduced so as to maintain charges equal to the aforesaid requirements."

Further, section 7 of the bylaws provides: "All entrance fees, monthly maintenance charges, routine service charges, nursing care charges, and non-rated charges may be waived in full, reduced in part, or liability for payment postponed based upon the individual's inability to pay and the Association's financial circumstances." Also, plaintiff is exempt from federal income tax pursuant to section 501(c)(3) of the United States Internal Revenue Code (26 U.S.C. § 501(c)(3) (1994)).

During 1996, plaintiff owned and operated a 122-bed, skilled-care nursing facility, and an apartment building containing 78 apartments for independent living. Plaintiff also owned 11 single-story, duplex buildings containing 22 independent living units, with each unit containing one or two bedrooms. For example, building 407 contains units 407A and 407B. Plaintiff sought a charitable-use

property tax exemption for 1996 on a parcel of property with five of the duplex buildings.

The residents of the duplexes at issue here lived in their units since at least 1996. The residents of most of the units signed a "Resident Agreement" with plaintiff, while the residents of one unit signed what is alternatively designated a "Rental Agreement" or "Rental Lease." The resident agreement required up-front entrance fees ranging from $65,000 to $76,900. The lease required a security deposit of $5,000. Both the resident agreement and the lease require the prospective resident to provide plaintiff with a detailed financial report as part of the resident's application.

Paragraph 10 of the resident agreement provides as follows. If a resident fails to make any of the required payments for a period of 90 days, the board of directors may, in its discretion, cancel the agreement. The paragraph declares the intent of the board of directors that once a resident has been accepted, the resident may not be terminated solely for inability to pay. The board of directors may either allow the delinquent charges to accrue as credits to the remaining returnable balance of the entrance fee, or even waive the payments "if such can be done without endangering the sound financial structure of the organization."

The lease includes the following provisions. Paragraph Five provides for a security deposit. Paragraph Three provides that if rent is not paid within 10 days after the due date, the resident shall pay an additional 10% of the overdue rent as a late payment penalty. Also, overdue rent shall accrue interest at the rate of $1\frac{1}{2}\%$ per month. Pursuant to paragraph 16, failure to pay rent constitutes a default, upon which plaintiff's remedies include the right to terminate the lease, take possession of the unit, and distrain for rent due. Paragraph 25 is a confession of judgment, pursuant to which plaintiff may

seek possession of the unit and a judgment for rent due from the resident at the resident's expense.

The ALJ noted from the administrative record an example of a maintenance fee reduction. During 1996, a husband and wife occupied, pursuant to a residential agreement, one of plaintiff's duplex units not at issue in this case. Because of high medical expenses, they were having trouble paying the monthly maintenance fee. The husband asked plaintiff to reduce their payment. It was agreed for that year their maintenance fee would be reduced $80 per month. In 1997, due to hardship, their maintenance fee was reduced an additional $50 per month. In 1998, they were able to pay the full monthly maintenance fee. In 1999, upon their request, they were granted a reduction of $70 per month. Initially, plaintiff reimbursed itself for this maintenance fee reduction out of the refundable portion of their entrance fee. Eventually the fund was exhausted and plaintiff carried the cost of the maintenance fee reduction. This was the only occurrence of a maintenance fee reduction in the last 15 years among plaintiff's 78 independent living apartments and 22 independent living duplex units.

While plaintiff has allowed prospective residents to delay payment of the entrance fee, plaintiff has never waived or reduced the entrance fee. Also, no resident has ever been evicted from the apartments or the duplexes because of inability to pay.

During the 1996 calendar year, plaintiff's nursing facility income was $3,464,277. Approximately 35% of plaintiff's nursing facility residents received Illinois public aid. For that year, plaintiff's average cost of providing care to a nursing facility resident was $82.63 per day. The public aid reimbursement per recipient was $68.06 per day. Thus, during 1996, plaintiff was spending an average of $14.57 more per day on a public aid recipient in its nursing facility than it was receiving.

Also during 1996, plaintiff's independent living income was $989,610. That same year, plaintiff received charitable contributions of $12,552.

Proceedings

In December 1996, plaintiff applied to the Madison County board of review (board) for the property tax exemption. Having been notified of plaintiff's application, Edwardsville Community School District No. 7 and the Village of Glen Carbon petitioned to intervene as taxing districts with tax revenue interests in the subject property. In March 1997, the board determined that the 1996 tax assessment of the subject property was $151,460 and recommended to the Department that the exemption be denied. In February 1999, the Department initially rejected the board's recommendation and granted the exemption, except for one building. See generally 35 ILCS 200/16—70 (West 2000).

In November 2000, upon the request of the school district and the village, the Department held an administrative hearing on plaintiff's application for property tax exemption. See generally 35 ILCS 200/8—35 (West 2000). In his recommended findings, the ALJ took administrative notice that on December 22, 1989, the Department exempted the skilled-care nursing facility, the independent living apartments, and a different parcel of property with six duplexes containing 12 independent living units.

At the close of the hearing, the ALJ recommended that the Department deny plaintiff's application. The ALJ found that plaintiff did not meet the requirements for the exemption as established by article IX, section 6, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IX, § 6) and section 15—65 of the Property Tax Code (35 ILCS 200/15—65 (West 2000)). The ALJ reasoned: "From the plain language of the Constitution and [section 15—65] it is clear that to qualify for a charitable exemption, property must first be actually used for charitable

purposes." The ALJ recognized that in *Methodist Old Peoples Home v. Korzen*, 39 Ill. 2d 149, 156-57 (1968), this court articulated six guidelines for determining whether property is in fact used for charitable purposes as required by the constitution and the Code. The ALJ concluded that the subject property "met only one of the six guidelines set forth in the *Methodist Old Peoples Home* case. Consequently these duplex units were not primarily used for charitable purposes." On March 28, 2001, the Department adopted the ALJ's recommended findings and conclusions as the final administrative decision. The Department served a copy of the decision on plaintiff via United States mail on April 5, 2001.

Plaintiff timely filed a complaint in the circuit court seeking administrative review of the Department's denial of plaintiff's application for property tax exemption. The circuit court set aside the Department's decision based solely on the court's interpretation of section 15—65 of the Property Tax Code (35 ILCS 200/15—65 (West 2000)). According to the circuit court, the current version of section 15—65(c) of the Property Tax Code removes the guidelines articulated by this court in *Methodist Old Peoples Home* for determining whether organizations such as plaintiff qualify for a charitable-use property tax exemption. The circuit court ruled that plaintiff qualified for the charitable-use property tax exemption based on: (1) plaintiff's federal income-tax-exempt status; and (2) plaintiff's bylaw provision allowing for the reduction or waiver of charges based on residents' inability to pay "whether or not any such fee reduction or waivers [*sic*] had actually been granted." The circuit court denied defendants' motion for reconsideration.

The appellate court affirmed. After discussing the statutory history of section 15—65(c), the court concluded:

"Accordingly, we believe that the plain language of the present statute dictates that when a facility fitting within

the parameters of section 15—65(c)—*e.g.*, an old people's home—meets the requirements that it (1) be an exempt organization under paragraph (3) of section 501(c) of the Internal Revenue Code and (2) either have bylaws that provide for a waiver or reduction, based on an individual's ability to pay, of entrance fees, assignment of assets, or fee for services or have been qualified, built, or financed under section 202 of the National Housing Act (12 U.S.C. § 1701 *et seq.* (1994)), then that facility is entitled to a charitable-use property tax exemption as a matter of law, without having to clear the additional nonstatutory hurdles imposed by the [*Methodist Old Peoples Home*] decision and intended to apply only to the pre-1984 version of the Property Tax Code. Because in the case at bar the plaintiff, an exempt organization under paragraph (3) of section 501(c) of the Internal Revenue Code with bylaws providing for a waiver or reduction, based on an individual's ability to pay, of the applicable entrance fee, clearly met the statutory requirements of section 15—65(c) for tax year 1996, the plaintiff is entitled as a matter of law to the requested exemption." 346 Ill. App. 3d at 256-57.

We allowed defendants' joint petition for leave to appeal. 177 Ill. 2d R. 315(a). We subsequently granted Life Services Network of Illinois leave to submit an *amicus curiae* brief in support of plaintiff. See 155 Ill. 2d R. 345. Additional pertinent background will be discussed in the context of our analysis of the issues.

## ANALYSIS

We note at the outset our standard of review. The Property Tax Code provides that judicial review of the Department's decisions be in accordance with the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 2000)). 35 ILCS 200/8—40 (West 2000). The Administrative Review Law provides that judicial review extends to all questions of law and fact presented by the entire record. The statute limits judicial review to the administrative record; the court may not hear new or additional evidence. The statute additionally mandates that

the "findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." 735 ILCS 5/3—110 (West 2000). Accordingly, an administrative agency's findings of fact should not be disturbed on review unless they are against the manifest weight of the evidence. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204 (1998); *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992).

In this case, however, the facts are not in dispute. Thus, the issue before us is not whether the Department's findings of fact were against the manifest weight of the evidence. Rather, the Department's decision as to whether plaintiff's property is exempt from taxation depends solely on the application of the appropriate legal standard to the undisputed facts, which is a question of law. See *Chicago Patrolmen's Ass'n v. Department of Revenue*, 171 Ill. 2d 263, 271 (1996); *City of Chicago v. Illinois Department of Revenue*, 147 Ill. 2d 484, 491 (1992) (and cases cited therein); *Caterpillar Tractor Co. v. Department of Revenue*, 29 Ill. 2d 564, 565-66 (1963). We review questions of law *de novo. City of Belvidere*, 181 Ill. 2d at 205 (and cases cited therein).

The Illinois Constitution and the Property Tax Code

The controlling principles, which flow from article IX of the 1970 Illinois Constitution, are quite established. Had the lower courts merely recited this fundamental authority, which they did not, the error in their judgments would have been apparent.

In Illinois, generally: "Every subject within the scope of civil government which is not within some constitutional inhibition may be acted upon by the General Assembly." *Locust Grove Cemetery Ass'n v. Rose*, 16 Ill. 2d 132, 138 (1959). The Illinois Constitution does not grant power to the legislature, but rather restricts the legislature's power to act. *MacMurray College v. Wright*, 38 Ill.

2d 272, 276 (1967); *Locust Grove*, 16 Ill. 2d at 138. Specifically, the state's inherent power to tax is vested in the General Assembly. The legislature's power to tax is plenary; it is restricted only by the federal and state constitutions. *Diana Shoe Stores Co. v. Department of Revenue*, 5 Ill. 2d 112, 114 (1955) (collecting cases). The power to exempt from taxation is concomitant with the power to tax. The legislature, having the inherent power to tax, also has the inherent power to grant exemptions from those taxes. *Carmichael v. Southern Coal & Coke Co.*, 301 U.S. 495, 509, 81 L. Ed. 1245, 1253, 57 S. Ct. 868, 872 (1937); see E. Arkiss, *A Perspective on the Real Estate Tax Exemption*, 54 Chi. B. Rec. 273, 274 (1973). This basic understanding of Illinois constitutional government shows the crucial role of the Illinois Constitution in establishing limits on the power of the legislature in the area of property tax exemption. The lower courts failed to even mention the pertinent constitutional provision.

Article IX of the 1970 Illinois Constitution generally subjects all real property to taxation. *Small v. Pangle*, 60 Ill. 2d 510, 514 (1975); *North Shore Post No. 21 of the American Legion v. Korzen*, 38 Ill. 2d 231, 233 (1967). Thus: " 'It is the well settled rule of law in the State of Illinois that all property is subject to taxation, unless exempt by statute, in conformity with the constitutional provisions relating thereto. Taxation is the rule—tax exemption is the exception.' " *City of Chicago v. Department of Revenue*, 147 Ill. 2d 484, 491 (1992), quoting *Rogers Park Post No. 108, American Legion v. Brenza*, 8 Ill. 2d 286, 289-90 (1956).

Section 6 of article IX of the 1970 Illinois Constitution permits the legislature to exempt certain property from taxation:

> "The General Assembly by law may exempt from taxation only the property of the State, units of local government and school districts and property used exclusively for

agricultural and horticultural societies, and for school, religious, cemetery and charitable purposes. The General Assembly by law may grant homestead exemptions or rent credits." Ill. Const. 1970, art. IX, § 6.

This section is clearly nothing more than a rephrasing of a similar provision in the 1870 Illinois Constitution. Accordingly, "cases interpreting the permissive legislative exemptions under the Constitution of 1870 are equally relevant to the limits of exemption now constitutionally permitted." *Pangle*, 60 Ill. 2d at 514; accord ILCS Ann., Ill. Const. 1970, art. IX, § 6, Constitutional Commentary, at 741 (Smith-Hurd 1993) (observing that the framers of the 1970 Illinois Constitution intended "to maintain existing Constitutional limitations on the General Assembly's power to grant property tax exemptions based upon use and ownership of the property").

Section 6 of article IX divides property that the legislature may exempt from taxation into two classes: (1) property owned by "the State, units of local government and school districts" (Ill. Const. 1970, art. IX, § 6); and (2) property used exclusively for the purposes defined in the second clause of the section. *City of Chicago*, 147 Ill. 2d at 493, citing *People ex rel. Gill v. Trustees of Schools*, 364 Ill. 131, 136 (1936). By enumerating the classes of property that the legislature may exempt from taxation, section 6 of article IX limits the legislature's authority to exempt; such enumeration excludes all other subjects of property tax exemption. The legislature cannot add to or broaden the exemptions that section 6 of article IX specifies. *Chicago Bar Ass'n v. Department of Revenue*, 163 Ill. 2d 290, 297 (1994) (and cases cited therein); *Locust Grove*, 16 Ill. 2d at 139. "Equally familiar is the rule that courts have no power to create exemption from taxation by judicial construction." *Spring Hill Cemetery v. Ryan*, 20 Ill. 2d 608, 616 (1960).

One class of property that the legislature may exempt from taxation is property used for charitable purposes.

Charitable use is a *constitutional* requirement. An applicant for a charitable-use property tax exemption must "comply unequivocally with the constitutional requirement of exclusive charitable use." *Small*, 60 Ill. 2d at 516, citing *People ex rel. Nordlund v. Association of the Winnebago Home for the Aged*, 40 Ill. 2d 91, 100 (1968). In *Methodist Old Peoples Home v. Korzen*, 39 Ill. 2d 149 (1968), this court articulated guidelines or criteria for resolving the constitutional question of charitable use: (1) the benefits derived are for an indefinite number of persons for their general welfare or in some way reducing the burdens on government; (2) the organization has no capital, capital stock, or shareholders, and does not profit from the enterprise; (3) funds are derived mainly from private and public charity, and the funds are held in trust for the objects and purposes expressed in the organization's charter; (4) charity is dispensed to all who need and apply for it; (5) no obstacles are placed in the way of those seeking the benefits; and (6) and the exclusive, *i.e.*, primary, use of the property is for charitable purposes. *Methodist Old Peoples Home*, 39 Ill. 2d at 156-57. This court held in *Methodist Old Peoples Home*, after applying the six criteria to the facts of the case, "that the plaintiff's property is not held exclusively for charitable purposes *within the meaning of our constitution* and is not entitled to exemption from tax." (Emphasis added.) *Methodist Old Peoples Home*, 39 Ill. 2d at 159-60; accord *Winnebago Home for the Aged*, 40 Ill. 2d at 102.

In conformity with section 6 of article IX, the legislature enacted a statute that creates a charitable-use property tax exemption. Section 15—65 of the Property Tax Code provides in pertinent part:

"Charitable purposes. All property of the following is exempt when actually and exclusively used for charitable or beneficent purposes, and not leased or otherwise used with a view to profit:

* * *

(c) Old people's homes, facilities for persons with a developmental disability, and not-for-profit organizations providing services or facilities related to the goals of educational, social and physical development, if, upon making application for the exemption, the applicant provides affirmative evidence that the home or facility or organization is an exempt organization under paragraph (3) of Section 501(c) of the Internal Revenue Code or its successor, and either: (i) the bylaws of the home or facility or not-for-profit organization provide for a waiver or reduction, based on an individual's ability to pay, of any entrance fee, assignment of assets, or fee for services, or (ii) the home or facility is qualified, built or financed under Section 202 of the National Housing Act of 1959, as amended.

An applicant that has been granted an exemption under this subsection on the basis that its bylaws provide for a waiver or reduction, based on an individual's ability to pay, of any entrance fee, assignment of assets, or fee for services may be periodically reviewed by the Department to determine if the waiver or reduction was a past policy or is a current policy. The Department may revoke the exemption if it finds that the policy for waiver or reduction is no longer current." 35 ILCS 200/15—65 (West 2000).

Section 15—65 also exempts the property of institutions of public charity, resale shops, not-for-profit health maintenance organizations, free public libraries, and historical societies, "when actually and exclusively used for charitable or beneficent purposes." 35 ILCS 200/15—65(a), (b), (d), (e), (f) (West 2000).

Of course, property tax exemption statutes, such as section 15—65, "are to be strictly construed and are not to be extended by judicial interpretation beyond the authority given in the constitution." *Northshore Post No. 21*, 38 Ill. 2d at 234-35. This court has held:

"Since the terms of article IX of the constitution subject all property generally to taxation, the courts have strictly construed statutes granting tax exemptions and have

insisted that they keep clearly within the boundaries set forth in the constitution. [Citations.] The burden of proving the right to exemption is upon the party seeking it, and in determining whether property is included within the scope of an exemption, all facts are to be construed and all debatable questions resolved in favor of taxation. [Citations.] Plaintiffs must show that its organization and the use of its property came within the provisions of the statute *and the constitution.*" (Emphasis added.) *Methodist Old Peoples Home*, 39 Ill. 2d at 155.

Accord *Association of the Winnebago Home for the Aged*, 40 Ill. 2d at 99-100; *North Shore Post No. 21*, 38 Ill. 2d at 235; *Coyne Electrical School v. Paschen*, 12 Ill. 2d 387, 389-90 (1957) (repeating rule that "the burden is on the person asserting the claim of exemption to prove clearly and conclusively that the use of the property in question is within both *the constitutional authorization* and the terms of the statute under which the claim of exemption is made" (emphasis added)).

In this case, the lower courts concluded that plaintiff qualified for the charitable-use property tax exemption based solely on plaintiff's (1) exemption from federal income taxes, and (2) bylaw provision allowing for the reduction or waiver of charges based on residents' inability to pay. 346 Ill. App. 3d at 257. The appellate court viewed the *Methodist Old Peoples Home* decision as interpreting only the charitable-use property tax exemption statute as it existed in 1968. 346 Ill. App. 3d at 256. Further, and without explanation, the appellate court examined the history of the charitable-use property tax exemption statute, from its 1968 language to its current version in section 15—65. The court noted that in 1984 the legislature amended the statute by adding the requirements of federal income-tax-exempt status and bylaw provision for fee waiver or reduction. The appellate court reasoned: "We believe that this amendment evinces the intent of the General Assembly to clearly and unambiguously state that with regard to old people's

homes, an actual and exclusive charitable use arises as a matter of law when [those] statutory requirements *** are met." 346 Ill. App. 3d at 256. Thus, the appellate court concluded that when a facility has met those two requirements, "then that facility is entitled to a charitable-use property tax exemption as a matter of law, without having to clear the additional nonstatutory hurdles imposed by the [*Methodist Old Peoples Home*] decision and intended to apply only to the pre-1984 version of the Property Tax Code." 346 Ill. App. 3d at 257.

The appellate court's analysis is erroneous. The *Methodist Old Peoples Home* criteria are not mere nonstatutory "hurdles" intended to apply only to the pre-1984 version of the charitable-use property tax exemption statute. Rather, this court articulated the criteria in *Methodist Old Peoples Home* to resolve the *constitutional* issue of charitable use. *Methodist Old Peoples Home*, 39 Ill. 2d at 156; see also *Association of the Winnebago Home for the Aged*, 40 Ill. 2d at 100. The legislature could not declare that property, which satisfied a *statutory* requirement, was *ipso facto* property used exclusively for a tax-exempt purpose specified in section 6 of article IX of the Illinois Constitution. It is for the courts, and not for the legislature, to determine whether property in a particular case is used for a constitutionally specified purpose. See, *e.g.*, *Methodist Old Peoples Home*, 39 Ill. 2d at 155-56; *MacMurray College*, 38 Ill. 2d at 276.

Indeed, it is well settled that the requirement of federal tax-exempt status cannot be deemed dispositive. Section 6 of article IX is not self-executing; it is permissive rather than mandatory. The Illinois Constitution does not *require* the legislature to exempt any property from taxation. A property tax exemption exists only when the legislature chooses to create one by enacting a law. *North Shore Post No. 21*, 38 Ill. 2d at 233; *Rogers Park Post No. 108*, 8 Ill. 2d at 290. "It follows, therefore, that

in exempting property the legislature may place restrictions, limitations, and conditions on such exemptions as may be proper by general law." *North Shore Post No. 21*, 38 Ill. 2d at 233. Again, however, " 'the statute cannot be made broader than the provisions of the constitution.' " *Methodist Old Peoples Home*, 39 Ill. 2d at 155, quoting *Locust Grove*, 16 Ill. 2d at 137. Thus, the legislature was free to include in section 15—65(c) of the Property Tax Code a requirement that the facility be exempt from federal income tax. However, a federal income tax exemption does not provide material facts about exclusive charitable use of property required by section 6 of article IX of the Illinois Constitution, and does not determine the constitutional issue. See *People ex rel. County Collector v. Hopedale Medical Foundation*, 46 Ill. 2d 450, 464 (1970) (and cases cited therein).

Further, the plain language of section 15—65 reveals that the legislature *did not* intend to remove the constitutional requirement of charitable use in the context of facilities such as plaintiff operates. The controlling principles are familiar.

> "The cardinal rule of statutory construction is to ascertain and give effect to the true intent of the legislature. [Citation.] The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning. [Citations.] The statute should be evaluated as a whole, with each provision construed in connection with every other section. [Citation.] If legislative intent can be ascertained from the statute's plain language, that intent must prevail without resort to other interpretive aids." *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997).

It is equally familiar that "a court presumes that the legislature intended to enact a constitutional statute. Accordingly, a court will construe a statute as constitutional, if it is reasonable to do so. [Citation.] If a statute's construction is doubtful, a court will resolve the doubt in favor of the statute's validity." *Bonaguro v. County Offic-*

*ers Electoral Board*, 158 Ill. 2d 391, 397 (1994); see, *e.g.*, *Methodist Old Peoples Home*, 39 Ill. 2d at 156; *MacMurray College*, 38 Ill. 2d at 277.

In this case, section 15—65, as earlier quoted, begins by reciting the constitutional requirement: "All property of the following is exempt *when actually and exclusively used for charitable or beneficent purposes*, and not leased or otherwise used with a view to profit." (Emphasis added.) 35 ILCS 200/15—65 (West 2000). The statute then identifies the types of properties that are eligible for the charitable exemption allowed by the Illinois Constitution. When read as a whole, section 15—65 obviously applies the charitable use requirement to each of the types of properties identified therein. "We repeat that a court should first look to the statutory language as the best indication of legislative intent without resorting to other aids for construction. [Citation.] Where the language of a statute is plain and unambiguous, a court need not consider its legislative history." *Envirite Corp. v. Illinois Environmental Protection Agency*, 158 Ill. 2d 210, 216-17 (1994) (and cases cited therein). In determining whether the charitable use requirement applied to plaintiff, the lower courts should have relied on the plain language of section 15—65 of the Property Tax Code, which conforms to section 6 of article IX of the 1970 Illinois Constitution.

We note that *amicus* cites decisions from other jurisdictions in support of plaintiff. However: " 'The numerous decisions of this court cited by both plaintiff and defendants in their briefs referred to in this opinion provide us with ample background for deciding the issue presented and we see no reason for relying on decisions from other jurisdictions ***.' " *Association of the Winnebago Home for the Aged*, 40 Ill. 2d at 102, quoting *Methodist Old Peoples Home*, 39 Ill. 2d at 159.

Of course, "charging fees and dispensing benefits to

other than those who are poverty stricken does not cause an institution to lose its charitable character." *Association of the Winnebago Home for the Aged*, 40 Ill. 2d at 101 (collecting cases). In this case, however, the lower courts' interpretation of section 15—65 of the Property Tax Code violated article IX of the 1970 Illinois Constitution. Therefore, the judgments of the lower courts must be reversed. We do not address defendants' additional arguments.

### The Department's Decision

As noted earlier, the issue before us is not whether the Department's findings of fact were against the manifest weight of the evidence but, rather, whether the ALJ applied the appropriate legal standard to the undisputed facts. We conclude that he did.

The ALJ acknowledged the constitutional principles discussed above, including the *Methodist Old Peoples Home* criteria. The ALJ applied the legal principles to the facts as follows:

"Eden is an Illinois not-for-profit corporation, consequently it has no capital, capital stock, or shareholders.

During 1996 Eden's funds were derived primarily from nursing home fees, independent living apartment and duplex rent, and not charitable contributions.

Concerning the criteria of whether the benefits derived are for an indefinite number of persons, charity is dispensed to all who need and apply for it, and no obstacles are place[d] in the way of those seeking the benefits in regard to these units, there is the matter of the substantial entrance fees. Most certainly the benefits derived are only for persons who can pay the substantial entrance fees. While Eden's bylaws provide that the entrance fees may be waived or reduced, in the last 15 years this simply has not happened. The best a prospective resident in the duplexes can hope for is a short delay before being required to pay the entrance fee. Regarding the monthly maintenance fee, the testimony indicates that in the last 15 years out of a total of 100 independent living units, there has been one

case where there was a reduction of the maintenance fee. During the first couple of years of that reduction, Eden was able to pay itself out of the reimbursable portion of the Residents' entrance fee. Clearly the entrance fee is an obstacle placed in the way of those seeking the benefits of Eden's independent living units. In addition the entrance fee provides Eden with a method of reimbursing itself if it is required to reduce the maintenance fee.

The witnesses for Eden testified that the prospective residents of the duplexes had the option of either executing the Resident Agreement, which required an entrance fee, or a Rental Contract. The Rental Contract requires a security deposit, which is set in the amount of several months rent. The Rental Contract also includes a late payment penalty, provides for interest on late payments, and also provides for eviction on failure to pay rent. The Rental Contract cannot under any circumstances be considered as promoting the charitable use of the independent living units subject to that agreement.

In 1996, all prospective residents of the duplexes were required to complete a very detailed financial statement, which along with either the entrance fee or the form of the Rental Contract constituted obstacles placed in the way of those seeking the benefits.

I therefore conclude that the five duplex units of Eden here in issue met only one of the six guidelines set forth in the *Methodist Old Peoples Home* case. Consequently these duplex units were not used primarily for charitable purposes."

The ALJ's decision applied the appropriate legal standard to the undisputed facts. We confirm the Department's decision denying plaintiff's application for a charitable-use property tax exemption for the 1996 tax year.

## CONCLUSION

For the foregoing reasons, the judgments of the appellate court and the circuit court of Madison County are

reversed, and the decision of the Department denying the exemption is confirmed.

*Appellate court reversed;*
*circuit court reversed;*
*Department confirmed.*

JUSTICE RARICK took no part in the consideration or decision of this case.