2016 IL App (1st) 152691

FOURTH DIVISION
December 22, 2016

No. 1-15-2691

CONSTANCE OSWALD,                                    )      Appeal from the
                                                     )      Circuit Court
        Plaintiff-Appellant,                         )      Cook County.
                                                     )
v.                                                   )
                                                     )      No. 12 CH 42723
BRIAN HAMER, in His Official Capacity as Director    )
of Revenue, and THE ILLINOIS DEPARTMENT              )
OF REVENUE,                                          )
                                                     )
        Defendants-Appellees,                        )
                                                     )
(Illinois Hospital Association,                      )      Honorable
                                                     )      Robert Lopez Cepero,
 Intervening Defendant-Appellee).                    )      Judge Presiding.

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Justices Howse and Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1      On appeal, plaintiff Constance Oswald, as a Cook County real property taxpayer, argues

that section 15-86 of the Property Tax Code (Code) (35 ILCS 200/15-86 (West 2012)) is

unconstitutional on its face because section 15-86(c) purports to grant a property tax exemption

to a hospital applicant without regard to whether the property is used exclusively for charitable

purposes, as required under article IX, section 6, of the Illinois Constitution (Ill. Const. 1970, art.

IX, § 6).

¶ 2      In November 2012, plaintiff filed an action for declaratory judgment in the trial court,

challenging the constitutionality of section 15-86. Section 15-86 details the process to seek a

property tax exemption for certain Illinois hospitals and their affiliates. Plaintiff asserted that

section 15-86 violates article IX, section 6, of the Illinois Constitution and, therefore, was unconstitutional on its face. Following cross-motions for summary judgment, the trial court granted summary judgment in favor of defendants, Brian Hamer, as Director of Revenue, and the Illinois Department of Revenue (collectively "the Department"), and intervening defendant, the Illinois Hospital Association, finding that section 15-86 was not facially unconstitutional.

¶ 3     There is no factual dispute in this case. The only issue before this court, whether section 15-86 is facially constitutional, is purely a question of law. We review a statute's constitutionality *de novo*. *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 200 (2009).

¶ 4     "Under Illinois law, taxation is the rule. Tax exemption is the exception." *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 388 (2010) (plurality opinion). Article IX of the Illinois Constitution "generally subjects all real property to taxation." *Eden Retirement Center, Inc. v. Department of Revenue*, 213 Ill. 2d 273, 285 (2004). "[T]he state's inherent power to tax is vested in the General Assembly. The legislature's power to tax is plenary; it is restricted only by the federal and state constitutions." *Id.* "The Illinois Constitution does not grant power to the legislature, but rather restricts the legislature's power to act." *Id.* at 284.

¶ 5     Article IX, section 6, of the constitution provides, in relevant part:

> "The General Assembly by law may exempt from taxation only the property of the State, units of local government and school districts and property used exclusively for agricultural and horticultural societies, and for school, religious, cemetery and charitable purposes." Ill. Const. 1970, art. IX, § 6.

¶ 6     "Section 6 is not self-executing. It merely authorizes the General Assembly to enact legislation exempting certain property from taxation." *Provena*, 236 Ill. 2d at 389. "By designating the classes of property which may be exempted from taxation, section 6 of article IX has placed a restriction on the legislature's authority to exempt." *Chicago Bar Ass'n v. Department of Revenue*, 163 Ill. 2d 290, 297 (1994). "Accordingly, a property tax exemption created by statute cannot be broader than the provisions of the constitution, and no property except that mentioned in the exemption provisions of the constitution can be exempted by any laws passed by the legislature." *Id.* "While the General Assembly has no authority to grant exemptions beyond those authorized by section 6, it 'may place restrictions, limitations, and conditions on [property tax] exemptions as may be proper by general law.' " *Provena*, 236 Ill. 2d at 390 (quoting *North Shore Post No. 21 of the American Legion v. Korzen*, 38 Ill. 2d 231, 233, (1967)).

¶ 7     "One class of property that the legislature may exempt from taxation is property used for charitable purposes. Charitable use is a *constitutional* requirement. An applicant for a charitable-use property tax exemption must 'comply unequivocally with the constitutional requirement of exclusive charitable use.' " (Emphasis in original.) *Eden*, 213 Ill. 2d at 286-87 (quoting *Small v. Pangle*, 60 Ill. 2d 510, 516 (1975)). Illinois courts have held that a "property satisfies the exclusive-use requirement for tax exemption purposes if it is *primarily* used for the exempted purpose." (Emphasis in original.) *Chicago Bar Ass'n*, 163 Ill. 2d at 300. Illinois courts have also concluded that "a 'hospital not owned by the State or any other municipal corporation, but which is open to all persons, regardless of race, creed or financial ability,' qualifies as a charitable institution under Illinois law provided certain conditions are satisfied." *Provena*, 236 Ill. 2d at 391 (quoting *People ex rel. Cannon v. Southern Illinois Hospital Corp.*, 404 Ill. 66, 69-70

(1949)). "There is, however, no blanket exemption under the law for hospitals or health-care providers. Whether a particular institution qualifies as a charitable institution and is exempt from property tax is a question which must be determined on a case-by-case basis." *Id.*

¶ 8      The Illinois Supreme Court first found not-for-profit hospitals to qualify for charitable property tax exemptions in the 1907 decision of *Sisters of the Third Order of St. Francis v. Board of Review*, 231 Ill. 317 (1907). In that case, the supreme court held that the hospital was an institution of public charity under a statutory predecessor to section 15-65, which granted property tax exemption to " '[a]ll property of institutions of public charity, when actually and exclusively used for such charitable purposes, not leased or otherwise used with a view to profit.' " *Id.* at 319 (quoting Ill. Rev. Stat. 1905, ch. 120, ¶ 2). The court discussed the purpose and work of the hospital as an institution of public charity.

> "In this hospital charity is extended to all the members of the community and is not confined to any particular class of individuals. It is an institution of public charity, and where an institution devoted to beneficence of that character is, under the law, exempt from taxation, it does not lose its immunity by reason of the fact that those patients received by it who are able to pay are required to do so, or by reason of the fact that it receives contributions from outside sources, so long as all the money received by it is devoted to the general purposes of the charity, and no portion of the money received by it is permitted to inure to the benefit of any private individual engaged in managing the charity."
> *Id.* at 320-21.

¶ 9     The court rejected an argument about the disparity between the number of charity patients in comparison with the number of patients who paid for service.

> "This objection seems to us without merit, so long as charity was dispensed to all those who needed it and who applied therefor, and so long as no private gain or profit came to any person connected with the institution, and so long as it does not appear that any obstacle, of any character, was by the corporation placed in the way of those who might need charity of the kind dispensed by this institution, calculated to prevent such persons making application to or obtaining admission to the hospital. The institution could not extend its benefactions to those who did not need them, or to those who did not seek admission." *Id.* at 322.

¶ 10     Nearly a century later in *Provena*, the supreme court considered whether a hospital was entitled to the charitable property tax exemption under section 15-65 of the Code (35 ILCS 200/15-65 (West 2002)). Section 15-65 granted property tax exemption for institutions of public charity for the subject property "when actually and exclusively used for charitable or beneficent purposes." 35 ILCS 200/15-65(a) (West 2002). With two justices recusing, the majority of the court concluded that the hospital failed to establish by clear and convincing evidence that it satisfied the requirements for the statutory charitable institution exemption. *Provena*, 236 Ill. 2d at 393. Specifically, the hospital failed to establish that "it dispensed charity to all who needed it and applied for it and did not appear to place any obstacles in the way of those who needed and would have availed themselves of the charitable benefits it dispenses." *Id.*

¶ 11    The supreme court explained the rationale behind providing exemptions for charitable institutions.

> "Conditioning charitable status on whether an activity helps relieve the burdens on government is appropriate. After all, each tax dollar lost to a charitable exemption is one less dollar affected governmental bodies will have to meet their obligations directly. If a charitable institution wishes to avail itself of funds which would otherwise flow into a public treasury, it is only fitting that the institution provide some compensatory benefit in exchange. While Illinois law has never required that there be a direct, dollar-for-dollar correlation between the value of the tax exemption and the value of the goods or services provided by the charity, it is a *sine qua non* of charitable status that those seeking a charitable exemption be able to demonstrate that their activities will help alleviate some financial burden incurred by the affected taxing bodies in performing their governmental functions." *Id.* at 395.

¶ 12    However, the justices disagreed on the question of charitable use. *Id.* at 412 (Burke, J., concurring in part and dissenting in part, joined by Freeman, J.). The plurality of the court found the hospital's charitable care was *de minimis*, as the evidence presented failed to show that the hospital used the property at issue "actually and exclusively for charitable purposes." *Id.* at 397 (plurality opinion). The plurality observed that while the hospital did not turn anyone away for treatment, it did not advertise its charity services and billed patients as a matter of course. Unpaid bills were referred to collection agencies. Discounts or waivers in costs were only made after it

6

was established that the patient lacked private insurance, did not have Medicare or Medicaid, lacked the ability to pay, and had qualified for the hospital's charity program. *Id.* at 398. The court had observed that in 2002, the hospital had "waived $1,758,940 in charges, representing an actual cost to it of only $831,724. This was equivalent to only 0.723% of PCMC's revenues for that year and was $268,276 less than the $1.1 million in tax benefits which [the hospital] stood to receive if its claim for a property tax exemption were granted." *Id.* at 381. "[B]oth the number of uninsured patients receiving free or discounted care and the dollar value of the care they received were [*de minimis*]. With very limited exception, the property was devoted to the care and treatment of patients in exchange for compensation through private insurance, Medicare and Medicaid, or direct payment from the patient or the patient's family." *Id.* at 397.

¶ 13     Justice Burke dissented on the issue of charitable use, joined by Justice Freeman. In her dissent, Justice Burke wrote, "By imposing a quantum of care requirement and monetary threshold, the plurality is injecting itself into matters best left to the legislature." *Id.* at 412 (Burke, J., concurring in part and dissenting in part, joined by Freeman, J.). The dissenting justices did not believe that

> "this court can, under the plain language of section 15-65, impose a quantum of care or monetary requirement, nor should it invent legislative intent in this regard. Setting a monetary or quantum standard is a complex decision which should be left to our legislature, should it so choose. The plurality has set a quantum of care requirement and monetary requirement without any guidelines. This can only cause confusion, speculation, and

uncertainty for everyone: institutions, taxing bodies, and the

courts." *Id.* at 415.

¶ 14    In response to the supreme court's decision in *Provena*, the General Assembly enacted

section 15-86 (35 ILCS 200/15-86 (West 2012)), which is the statute at issue in this case. The

General Assembly expressly discussed *Provena* and its intent behind the enactment of the

statute. The General Assembly observed that "despite" the decision in *Provena*, "there is

considerable uncertainty surrounding the test for charitable property tax exemption, especially

regarding the application of a quantitative or monetary threshold." 35 ILCS 200/15-86(a)(1)

(West 2012). The legislature further reasoned:

"(3) It is essential to ensure that tax exemption law relating

to hospitals accounts for the complexities of the modern health

care delivery system. Health care is moving beyond the walls of

the hospital. In addition to treating individual patients, hospitals

are assuming responsibility for improving the health status of

communities and populations. Low-income and underserved

communities benefit disproportionately by these activities." 35

ILCS 200/15-86(a)(3) (West 2012).

¶ 15    The General Assembly explicitly codified its intent in section 15-86 in the statutory text.

"(5) Working with the Illinois hospital community and

other interested parties, the General Assembly has developed a

comprehensive combination of related legislation that addresses

hospital property tax exemption, significantly increases access to

free health care for indigent persons, and strengthens the Medical

Assistance program. It is the intent of the General Assembly to establish a new category of ownership for charitable property tax exemption to be applied to not-for-profit hospitals and hospital affiliates in lieu of the existing ownership category of 'institutions of public charity'. It is also the intent of the General Assembly to establish quantifiable standards for the issuance of charitable exemptions for such property. It is not the intent of the General Assembly to declare any property exempt ipso facto, but rather to establish criteria to be applied to the facts on a case-by-case basis."

35 ILCS 200/15-86(a)(5) (West 2012).

¶ 16    The crux of plaintiff's argument that section 15-86 is facially unconstitutional is one sentence in subsection (c) which quantifies the charitable exemption for the respective property. Section 15-86(c) provides, in relevant part:

"(c) A hospital applicant satisfies the conditions for an exemption under this Section with respect to the subject property, and *shall be issued a charitable exemption for that property*, if the value of services or activities listed in subsection (e) for the hospital year equals or exceeds the relevant hospital entity's estimated property tax liability, as determined under subsection (g), for the year for which exemption is sought." (Emphasis added.) 35 ILCS 200/15-86(c) (West 2012).

¶ 17    Subsection (e) details the "[s]ervices that address the health care needs of low-income or underserved individuals or relieve the burden of government with regard to health care services."

9

35 ILCS 200/15-86(e) (West 2012). The subsection then lists the services and activities that would be considered in making the calculations under subsection (c). These services and activities include charity care, health services to low-income and underserved individuals, subsidy of state and local governments, support for state health care programs for low-income individuals, subsidy for treating dual-eligibility Medicare/Medicaid patients, relief of the burden of government related to health care of low-income individuals, and any other activity by the relevant hospital entity that the Department determines relieves the burden of government or addresses the health of low-income or underserved individuals. 35 ILCS 200/15-86(e) (West 2012). The statute provided additional details and explanations for how the applicable service or activity can be utilized by the hospital applicants in seeking a property tax exemption.

¶ 18     According to plaintiff, section 15-86(c) is unconstitutional on its face because "it creates a statutory standard for charitable exemption that conflicts with article IX, section 6 of the Illinois constitution." Plaintiff points out that section 15-86 does not mention explicitly the constitutional requirement of "exclusive" for charitable use. Plaintiff argues that the section 15-86 in operation would grant charitable exemption without regard to the constitutional requirement of exclusive charitable use so long as the hospital established that its value of the designated services or activities was equal or greater than the amount of property tax assessed for the subject property.

¶ 19     " 'Facial invalidation "is, manifestly, strong medicine" that "has been employed by the court sparingly and only as a last resort." ' " *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009) (quoting *National Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998), quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)). "Statutes carry a strong presumption of constitutionality." *Walker v. McGuire*, 2015 IL 117138, ¶ 12. "To overcome this

presumption, the party challenging the statute must clearly establish the statute's invalidity." *Id.* "This court has a duty to construe a statute in a manner that upholds its constitutionality, if reasonably possible to do so." *Id.*

¶ 20     "A statute is facially invalid only if there is no set of circumstances under which the statute would be valid." *In re M.A.*, 2015 IL 118049, ¶ 39 (citing *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305-06 (2008)). "The fact that a statute could be found unconstitutional under some circumstances does not establish its facial invalidity." *Id.* "Consequently, a facial challenge to the constitutionality of a legislative enactment is the most difficult challenge to mount successfully." *Id.* In contrast, an "as applied" constitutional challenge is limited to how the statute was applied in the plaintiff's specific circumstances. *Id.* ¶ 40. "If a plaintiff prevails in an 'as applied' challenge, enforcement of the statute is enjoined only against the plaintiff, while a finding that a statute is facially unconstitutional voids the statute in its entirety and in all applications." *Id.*

¶ 21     Plaintiff contends that section 15-86 is facially unconstitutional because it mandates the issuance of a charitable exemption to property taxes if the requirements under subsection (c) are met. According to plaintiff, section 15-86(c) requires the exemption without consideration of whether the property at issue was exclusively for charitable purposes, as required under article IX, section 6, of the constitution. Plaintiff bases this argument on her interpretation of the word "shall" as used in section 15-86(c) as mandatory rather than directory.

¶ 22     We reject plaintiff's interpretation that the legislature intended the word "shall" to be mandatory rather than directory in nature in section 15-86(c). The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 16. The best evidence of

legislative intent is the language of the statute, and when possible, the court should interpret the language of a statute according to its plain and ordinary meaning. *Id*. "In determining the plain meaning, we must consider the statute in its entirety, the subject it addresses, and the apparent intent of the legislature in enacting it." *Id.*

¶ 23    "A mandatory provision and a directory provision are both couched in obligatory language, but they differ in that noncompliance with a mandatory provision vitiates the governmental action, whereas noncompliance with a directory provision has no such effect." *People v. Four Thousand Eight Hundred Fifty Dollars ($4,850) United States Currency*, 2011 IL App (4th) 100528, ¶ 24. Generally, the use of the word "shall" indicates a mandatory intent, but "in no case regarding the mandatory-directory dichotomy has 'shall' controlled the outcome." *People v. Robinson*, 217 Ill. 2d 43, 53 (2005). The designation of a statute as mandatory or directory " 'simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates.' " *Id.* at 51-52 (quoting *Morris v. County of Marin*, 559 P.2d 606, 610-11 (Cal. 1977) (*en banc*)).

¶ 24    Statutes are mandatory when the legislative intent dictates a particular consequence for failure to comply with the provision. *People v. Delvillar*, 235 Ill. 2d 507, 514-15 (2009). "In the absence of such intent the statute is directory and no particular consequence flows from noncompliance. That is not to say, however, that there are no consequences. A directory reading acknowledges only that no specific consequence is triggered by the failure to comply with the statute." (Emphasis omitted.) *Id.* at 515.

¶ 25    The supreme court has held that "we presume that language issuing a procedural command to a government official indicates an intent that the statute is directory." *Id.* at 517.

This presumption may be overcome by either of two conditions to show that provision is mandatory: first, "when there is negative language prohibiting further action in the case of noncompliance," or second, "when the right the provision is designed to protect would generally be injured under a directory reading." *Id.* (citing *Robinson*, 217 Ill. 2d at 58).

¶ 26     Turning to the language of section 15-86(c), we find that the use of "shall" in this context is directory in nature. First, the section does not contain any negative language prohibiting noncompliance. No consequence is triggered by the failure to issue a charitable exemption under the language of section 15-86(c), and noncompliance with the statute offers no direct injury. Further, given the presumption that taxation is the rule, this statute is not protecting a right. Tax exemption is an exception, and section 15-86(c) directs the Department on its consideration of a hospital applicant's property tax status.

¶ 27     We also find that our construction of section 15-86(c) as directory is in line with prior cases considering the issuance of charitable exemption from property taxes, such that statutes are considered alongside the constitutional requirements. The Illinois Supreme Court has consistently held that statutes detailing types of property subject to exemption are descriptive and illustrative of property that might qualify under the "exclusive" requirement of article IX, section 6, of the constitution.

¶ 28     In *McKenzie v. Johnson*, 98 Ill. 2d 87 (1983), the plaintiff challenged section 19.1of the Revenue Act of 1939 as facially unconstitutional for failing to comply with article IX, section 6, of the constitution. The statutory language at issue provided,

> " 'The Occupancy, in whole or in part, of a school-owned and
>
> operated dormitory or residence hall by students who belong to one
>
> or more fraternities, sororities, or other campus organizations shall

not defeat the exemption for such property under the terms of this

Section.' " (Emphasis omitted.) *Id.* at 100 (quoting Ill. Rev. Stat.

1981, ch. 120, ¶ 500.1).

¶ 29     The supreme court upheld the statute as facially constitutional, finding that "the legislature's addition of the sentence referring to fraternities was merely a description or illustration of another type of property that might qualify, under appropriate circumstances, as property used exclusively for school purposes." *Id.* at 101. The plaintiff challenged the statute on the basis that fraternities and sororities are exclusively social organizations and cannot be used "exclusively" for charitable purposes, as required under the constitution. The supreme court held that it could not say that "school-owned fraternity houses *per se* may never qualify for a property tax exemption as property used exclusively for school purposes. The availability of the exemption depends on questions of fact such as how students become eligible to use the facility, and no such evidence has been presented in this facial challenge to the statute." *Id.* at 102.

¶ 30     In *Chicago Bar Ass'n v. Department of Revenue*, 163 Ill. 2d 290 (1994), the supreme court considered the constitutionality of another portion of section 19.1. In that case, the Chicago Bar Association (CBA) had sought a finding that its new headquarters adjacent to the John Marshall Law School was exempt from property taxes. The CBA based its claim on the following language from section 19.1, which granted an exemption for school property,

" 'including, in counties of over 200,000 population which

classify real property, property (including interests in land and

other facilities) on or adjacent to (or adjacent to, except separated

by a public street, alley, sidewalk, parkway or other public way

from) the grounds of a school which property is used by an

academic, research or professional society, institute, association or organization which serves the advancement of learning in a field or fields of study taught by the school and which property is not used with a view to profit.' " *Id.* at 293-94 (quoting Ill. Rev. Stat. 1991, ch. 120, ¶ 500.1).

¶ 31 The Department denied the CBA's request for an exemption. The circuit court affirmed the denial and held that portion of section 19.1 was unconstitutional on its face because it exceeded the scope of the school exemption provided in article IX, section 6, of the constitution. *Id.* at 296-97.

¶ 32 On appeal, the supreme court considered the circuit court's conclusion that portion of section 19.1 was facially unconstitutional. The supreme court observed that the circuit court reasoned that the "adjacent property" clause of section 19.1 violated the constitution by expanding the provisions set forth in the constitution requiring exclusive use. Under the circuit court's interpretation, "it would allow an exemption for property adjacent to a school, provided the various statutory conditions have been satisfied, even though the adjacent property was not, itself, used 'exclusively for *** school *** purposes' as article IX, section 6, requires." *Id.* at 298. "If the circuit court's construction of the statute were accepted, its conclusion would be correct. The 'adjacent property' clause of section 19.1 would be invalid on its face. In our view, however, the circuit court's analysis does not adequately consider that when evaluating the constitutionality of a legislative enactment, a court must presume that the statute is constitutional." *Id.*

¶ 33 The supreme court did not believe that "the 'adjacent property' clause of section 19.1 should be construed as eliminating the requirement that property must in fact be used exclusively

15

for school purposes in order to qualify for an exemption under section 6 of article IX (Ill. Const. 1970, art. IX, § 6). The language of the clause identifies the property entitled to the school exemption as 'including' property adjacent to school which has certain specified characteristics." *Id.* The court continued by considering the portion at issue in previous cases.

> "[W]e believe that the 'adjacent property' clause in section 19.1 merely provides a description or illustration of a type of property that may be entitled to exemption under article IX, section 6. It in no way modifies the limitations imposed by our constitution. The exclusive-school-use requirement of article IX, section 6, therefore still pertains. For this reason, a party seeking to invoke the exemption still has the burden of proving clearly and conclusively that the property in question not only falls within the terms of the statute under which the exemption is claimed, but also that it comports with the constitutional authorization." *Id.* at 299-300.

See also *McKenzie*, 98 Ill. 2d at 96-97; *MacMurray College v. Wright*, 38 Ill. 2d 272, 277-78 (1967) (finding that a clause in section 19.1 addressing dormitories was descriptive and illustrative, "not with a declaratory intendment," and the statute did not remove the burden of establishing "exclusive[ ]" for school purposes under the constitution).

¶ 34    The supreme court reiterated that "[t]he primary use of property, not its incidental uses, determines its tax-exempt status." *Chicago Bar Ass'n*, 163 Ill. 2d at 300. "There is no inherent reason why property which is adjacent to a school and which otherwise meets the conditions of section 19.1 cannot conform to this standard. Some parcels may well qualify as being used 'exclusively for *** school *** purposes' as the constitution requires, while others will not.

Whether a given piece of property is exempt will turn on the evidence showing how it is used." *Id.*

¶ 35     The supreme court concluded that the circuit court erred in finding section 19.1 to be unconstitutional on its face but agreed with its decision to affirm the Department's decision to deny an exemption to the CBA. *Id.* "The circuit court noted that in the proceedings before the administrative agency, the entire focus of the CBA's presentation was on establishing compliance with the terms of section 19.1. It did not address the additional question of whether the headquarters satisfied the constitutional requirement that the property be used 'exclusively for *** school *** purposes.' Rather, it assumed that property which met the statutory exemption fell within the constitutional authorization because, in enacting the statute, the legislature declared that it would." *Id.* at 300-01.

¶ 36     However, the supreme court found this assumption to be in error, noting that "[w]hether particular property is used 'exclusively for *** school *** purposes' within the meaning of the constitution is a matter for the courts, and not the legislature, to ascertain." *Id.* at 301. "The legislature cannot, by its enactment, make that a school purpose which is not in fact a school purpose." *Id.* "Each individual claim must be determined from the facts presented. In applying the law to the facts, the court must be mindful that taxation is the rule. Tax exemption is the exception. Article IX, section 6 [citation], and any statutes enacted under its provisions must be resolved in favor of taxation." *Id.* The court found that the property primarily served as a place for members to meet, and any educational use was secondary and incidental. Accordingly, the court concluded that the exemption was properly denied. *Id.* at 302.

¶ 37     In subsequent decisions considering the requirements of exclusive use requirements of article IX, section 6, in tandem with the statutes enacted by the General Assembly, the supreme

court maintained that the constitutional requirement is paramount. As we previously observed, "[c]haritable use is a *constitutional* requirement. An applicant for a charitable-use property tax exemption must 'comply unequivocally with the constitutional requirement of exclusive charitable use.' " (Emphasis in original.) *Eden*, 213 Ill. 2d at 287 (quoting *Small*, 60 Ill. 2d at 516).

¶ 38　　The *Eden* court examined whether a nursing home was eligible for a property tax exemption under section 15-65 of the Code. Section 15-65 exempts a specific list of property from tax "when actually and exclusively used for charitable or beneficent purposes," including

> "Old people's homes *** if, upon making application for the exemption, the applicant provides affirmative evidence that the home or facility or organization is an exempt organization under paragraph (3) of Section 501(c) of the Internal Revenue Code or its successor, and either: (i) the bylaws of the home or facility or not-for-profit organization provide for a waiver or reduction, based on an individual's ability to pay, of any entrance fee, assignment of assets, or fee for services, or (ii) the home or facility is qualified, built or financed under Section 202 of the National Housing Act of 1959, as amended." 35 ILCS 200/15-65(c) (West 2000).

¶ 39　　The Department had denied the exemption, which the circuit and appellate court set aside. The lower courts found that the plaintiff qualified for the charitable use property tax exemption based "solely on plaintiff's (1) exemption from federal income taxes, and (2) bylaw provision allowing for the reduction or waiver of charges based on residents' inability to pay."

*Eden*, 213 Ill. 2d at 289. The supreme court found this analysis to be erroneous, as it failed to consider the constitutional requirements under article IX, section 6.

> "The legislature could not declare that property, which satisfied a *statutory* requirement, was *ipso facto* property used exclusively for a tax-exempt purpose specified in section 6 of article IX of the Illinois Constitution. It is for the courts, and not for the legislature, to determine whether property in a particular case is used for a constitutionally specified purpose." (Emphasis in original.) *Id*. at 290.

The supreme court further reasoned that "the legislature was free to include in section 15-65(c) of the Property Tax Code a requirement that the facility be exempt from federal income tax. However, a federal income tax exemption does not provide material facts about exclusive charitable use of property required by section 6 of article IX of the Illinois Constitution, and does not determine the constitutional issue." *Id.* at 291.

¶ 40     The supreme court in *Eden* also observed that section 15-65 included the constitutional requirement of exclusive use for charitable purposes in the opening of the section. The court found that the plain language of the statute conforms to article IX, section 6, of the constitution. *Id.* at 292.

¶ 41     In the present case, we acknowledge that section 15-86 does not contain the constitutional language relating to the exclusive use for charitable purposes set forth in article IX, section 6. However, as the *Eden* court stated, "[i]t is equally familiar that 'a court presumes that the legislature intended to enact a constitutional statute. Accordingly, a court will construe a statute as constitutional, if it is reasonable to do so. [Citation.] If a statute's construction is doubtful, a

19

court will resolve the doubt in favor of the statute's validity.' " *Id.* at 291-92 (quoting *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 397 (1994)).

¶ 42     The General Assembly heeded the supreme court's decision in *Eden* while drafting section 15-86. The legislative intent codified in section 15-86(a) directly references language used by the *Eden* court.

> "It is not the intent of the General Assembly to declare any property exempt ipso facto, but rather to establish criteria to be applied to the facts on a case-by-case basis." 35 ILCS 200/15-86(a)(5) (West 2012).

¶ 43     It is clear that the General Assembly did not intend for satisfaction of section 15-86 to *ipso facto* grant an exemption, as the supreme court in *Eden* held the legislature cannot do. Rather, the General Assembly intended for the requirements of section 15-86 to be considered on a case-by-case basis, along with the constitutional requirements. Moreover, "[u]nder the doctrine of *in pari materia*, two legislative acts that address the same subject are considered with reference to one another, so that they may be given harmonious effect." *Citizens Opposing Pollution v. ExxonMobil Coal U.S.A.*, 2012 IL 111286, ¶ 24. "The doctrine is consistent with our acknowledgment that one of the fundamental principles of statutory construction is to view all of the provisions of a statute as a whole." *Id.*

¶ 44     Under section 15-65, the legislature had included "institutions of public charity" as one of the types of property exempted from taxes. 35 ILCS 200/15-65(a) (West 2012). The General Assembly noted in section 15-86(a)(5) that the statute was intended to create "a new category of ownership for charitable property tax exemption to be applied to not-for-profit hospitals and hospital affiliates in lieu of the existing ownership category of 'institutions of public charity.' "

35 ILCS 200/15-86(a)(5) (West 2012). If we consider both sections together, section 15-86 was added in reference to section 15-65, to carve out a new category in light of the evolving health care system in Illinois. After *Provena*, the General Assembly sought to address the limited nature of the category "institutions of public charity" under section 15-65 when considering modern hospitals. As detailed above, section 15-86(a) detailed the General Assembly's intent and response to the problems in determining charitable exemption for property tax for hospitals. The General Assembly was clearly mindful of recent supreme court decisions as well as the language previously used in determining charitable exemption. The dissent in *Provena* recognized that "[s]etting a monetary or quantum standard is a complex decision which should be left to our legislature, should it so choose." *Provena*, 236 Ill. 2d at 415. The General Assembly quoted this language in its preamble to section 15-86(a) to illustrate its intent and to help explain the reason it chose to enact a quantifiable calculation to use as part of the process in determining a charitable exemption. We do not believe the legislature had any intent for section 15-86(c) to supplant the constitution, supreme court precedent, or prior legislative enactments. Such an interpretation runs afoul of the presumption that statutes are constitutional, and we should err on the side of constitutionality if reasonably possible to do so.

¶ 45     We do not believe the absence of language indicating that the property must be used exclusively for charitable purposes in accordance with article IX, section 6, of the constitution alters our interpretation. "Where the intent of the legislature is otherwise clear, the judiciary possesses the authority to read language into a statute which has been omitted through legislative oversight." *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 510 (2007). "When a literal interpretation of a statutory term would lead to consequences that the legislature could not have contemplated and surely did not intend, this court will give the statutory language

a reasonable interpretation." *Id.* We decline to read section 15-86 literally such that absence of any exclusivity language suggests that the statute was meant to be read separate from the constitutional requirement. Given the inclusion of such language in section 15-65, we believe the General Assembly meant for the construction of section 15-86 to be under the constitutional requirements. Further, since section 15-86 created a new category of ownership in addition to those listed in section 15-65, it logically follows we could read the exclusive language from section 15-65 as applicable to section 15-86. Thus, any error in the absence of this exclusivity language was a mere legislative oversight and does not negate its compliance with the constitutional requirements of exclusive use for charitable purposes.

¶ 46    Based on our analysis of constitutional principles, supreme court case law, and the language of the legislature, we conclude that section 15-86 is facially constitutional. Under the guidelines of cases discussed above, we decline to interpret section 15-86 in such a way that its application negates the constitutional requirement. The Illinois Supreme Court has consistently found that statutes detailing property tax exemption were descriptive and illustrative of property that may qualify under the constitutional requirements of exclusive use. "Charitable use is a *constitutional* requirement." (Emphasis in original.) *Eden*, 213 Ill. 2d at 287. The operation of section 15-86 does not and cannot remove that requirement. As the *Eden* court held, the satisfaction of a statutory requirement is not sufficient and does not end the analysis, as the hospital seeking an exemption still must establish that the subject property is used exclusively for charitable purposes, as article IX, section 6, mandates.

¶ 47    Moreover, even if we agreed with plaintiff's interpretation that section 15-86 required the issuance of a charitable exemption based only on the satisfaction of the statute, plaintiff cannot sustain her burden that section 15-86 is facially unconstitutional under the no-set-of-

circumstances test. While it is conceivable that a hospital may be able to satisfy the requirements of section 15-86 but not article IX, section 6, of the constitution, that is not the test in Illinois. As we have previously observed, the supreme court has held that a "statute is facially invalid only if there is no set of circumstances under which the statute would be valid." *In re M.A.*, 2015 IL 118049, ¶ 39. "The fact that a statute could be found unconstitutional under some circumstances does not establish its facial invalidity." *Id.* Plaintiff concedes that it is "hypothetically possible" for a hospital to satisfy the requirements of section 15-86(c), in that the provided services and activities listed in subsection (e) equaled or exceeded the estimated property tax liability, and used its property exclusively for charitable purposes under article IX, section 6, of the constitution. We cannot say that a hospital applicant *per se* may not satisfy the requirement of section 15-86 with property used exclusively for charitable purposes. See *McKenzie*, 98 Ill. 2d at 102. As both the General Assembly and the supreme court have noted, that analysis is left to the courts on a case-by-case basis. Thus, section 15-86 is facially constitutional, and the trial court properly granted summary judgment in favor of the defendants.

¶ 48    We acknowledge that plaintiff relied on the Fourth District's recent decision in *Carle Foundation v. Cunningham Township*, 2016 IL App (4th) 140795, *appeal allowed*, No. 120427 (Ill. May 25, 2016), for support. In that case, the Fourth District concluded that section 15-86 was unconstitutional on its face. For the reasons discussed in our decision, we have reached a different conclusion and respectfully disagree with the court's decision.

¶ 49    Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

¶ 50    Affirmed.